WILLIAM A. PULLEY, Respondent, v. ADOLPHUS SCOTT, Appellant, No. 42645—247 S. W. (2d) 767.

Division Two, April 14, 1952.

1218

*Ward & Reeves* and *Finch & Finch* for appellant.

1220

*Web A. Welker* for respondent.

 WESTHUES, C.—Plaintiff brought this suit to recover $20,000 as damages for personal injuries alleged to have been sustained through the negligence of the defendant. There was a verdict for the defendant. Plaintiff's motion for a new trial was sustained by the trial court. The grounds assigned by the court were errors in instructions 4, 5, and 6 given at defendant's request. From the order the defendant appealed.

The evidence showed the following to have occurred: At about eleven o'clock on the night of October 1, 1949, plaintiff was walking south on U.S. Highway 61 about a mile or so south of Portageville, Missouri. He was on his way home which was about three miles southwest of Hayti, Missouri. He testified that a car approached from the north and "I thumbed him and he said something about, 'Do you want a ride?' I go down the edge of the highway some 10 or 15 steps and all at once my light went out like that." On further examination his testimony was as follows:

"Q. You were on the edge of the concrete?

"A. Yes, sir, trying to catch up with that car.

"Q. You were trotting south?

"A. Yes, sir."

Plaintiff explained that what he meant by "my light went out" was that he was rendered unconscious when he was struck by a car going south as he was trying to catch up with the car he had "thumbed" which he thought was stopping to let him ride. The evidence was that the roadway was dry and the weather clear.

It was admitted that it was defendant's car which collided with plaintiff. The defendant testified that as he was driving south at the point in question, a car with bright lights was approaching from the south; that he (the defendant) was driving at about 35 miles per hour; that he did not see plaintiff until he was about 8 or 10 feet away from him; that he then swerved to the left in an attempt to miss him. Note a portion of defendant's evidence:

"Q. At the time you swerved did you put on your brakes?

"A. I put on my brakes and swerved at the same time.

"Q. Tell the jury the position of the wheels of your car with reference to the black line at the time he hit the side of your car.

"A. I was astraddle the line. When I saw him I was on my right side, six, eight or ten feet - - he was right close. He appeared all at once. I don't know which way he come from. He was in motion as though it was an animal. I swerved away, whatever it was. When I swerved this car shot by and he hit the car door and I cut back and stopped."

Defendant further testified that when traveling at 35 miles per hour, he could stop within 15 to 20 feet. He admitted that he stopped within 75 or 80 feet.

 The case was submitted to a jury solely on the humanitarian doctrine. The defendant urges that the evidence was insufficient to

1222

justify a submission of the case to a jury. The defendant cited a number ▮ of cases in support of his contention. We need notice only one of them, Claridge v. Anzolone, 359 Mo. 65, 220 S.W. (2d) 33. In that case this case this court en banc said, 220 S.W. (2d) l.c. 34: "a defendant is liable for injuring a plaintiff if he sees him (or, where defendant is under a duty to keep a vigilant watch, should see him) in a position of imminent peril, in time, by the exercise of due care and with safety to himself and others, to avert the injury."

A jury in the present case could well have found that the defendant should have discovered plaintiff "trotting" down the highway in time to have averted injuring him. The point must be ruled against the defendant.

▮ Instruction 6, on the burden of proof, the giving of which was deemed to be erroneous by the trial court, reads as follows:

"The Court instructs the jury that the charge laid by the plaintiff against the defendant in this case is one of negligence. Recovery may not be had on a charge of negligence except when such charge is sustained by the preponderance, that is, the greater weight of the credible evidence to the reasonable satisfaction of the jury.

"It does not devolve upon the defendant to disprove said charge, but rather the law casts the burden of proof in reference to said charge upon plaintiff and said charge of negligence must be sustained by the preponderance, that is, the greater weight of the credible evidence to the reasonable satisfaction of the jury. If, therefore, you find the evidence touching the charge of negligence against the defendant (,) 'as submitted in these instructions' (,) does not preponderate in favor of the plaintiff, or is evenly balanced, then, in either event, plaintiff is not entitled to recover against the defendant and your verdict must be in favor of the defendant."

The giving of instructions containing such a phrase as "reasonable satisfaction" has been criticised by this court as casting a greater burden on a plaintiff than required by law. Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S.W. (2d) 58, l.c. 63 (12); Nelson v. Evans, 338 Mo. 991, 93 S.W. (2d) 691, l.c. 694-696 (5); Johnson v. Dawidoff, 352 Mo. 343, 177 S.W. (2d) 467, l.c. 472 (8); Seago v. New York Central R. Co., 349 Mo. 1249, 164 S.W. (2d) 336, l.c. 340, 341 (5, 6) (7, 8).

In the Seago case, supra, Division I of this court said: "What we have said of this instruction ought to be a sufficient warning to the bar and trial courts to observe the admonition in the Rouchene case, supra, as to burden of proof instructions."

In Johnson v. Dawidoff, supra, Division II of this court said: "It is certain, in view of what we have said, that if a trial court should grant a new trial and assign as a reason therefor the giving of such an instruction this court will sustain the ruling."

In a number of the above cases, the question of the correctness of instructions on the burden of proof was considered at length. Authorities and cases from other jurisdictions were cited. We demonstrated that such phrases as "to the reasonable satisfaction of the jury," "beyond doubt," "to the satisfaction," and "however slightly" were generally held improper. For cases from other jurisdictions see 32 C.J.S. 1047, Sec. 1020; 20 Am. Jur., pp. 1100-1102, Sec's. 1249 and 1250; Heacock v. Baule, (Iowa) 249 N.W. 437, 93 A.L.R. 151.

Instructions 4 and 5 were given at defendant's request. Instruction 4 was a converse of plaintiff's instruction submitting humanitarian negligence. The theory of the defendant was that plaintiff moved from somewhere west of the pavement onto the pavement in front of defendant's car in such a manner that the defendant could not, in the exercise of the highest degree of care, have avoided a collision. We need not consider the correctness of this instruction except to say that the defendant was entitled to a converse instruction submitting his theory of the case. Such instructions to be authorized must be supported by evidence. By instruction 5 the defendant submitted to the jury the question of whether plaintiff's negligence, if any, was the only negligence causing the collision. It was referred to as a sole cause instruction. Under the facts proven in this case, the defendant's theory could well have been submitted in a converse instruction. We see no need for two instructions submitting the same theory. The case of Janssens v. Thompson, 360 Mo. 351, 228 S.W. (2d) 743, cited by the defendant, presents the views of this court on the question of so called "sole cause" instructions.

The order of the trial court granting a new trial is hereby affirmed and the cause remanded. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.